UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

DORIS CLARKSON, et al.,

                       Plaintiff,           91 Civ. 1792

   -against-                               OPINION

GLENN GOORD, et al.,

                       Defendants.

------------------------------------------X

A P P E A R A N C E S:

            Pro Se

            Reginald McFadden
            DIN #95A6279
            Attica Correctional Facility
            639 Exchange Street
            Attica, New York 14011

            Attorneys for Defendants

            ERIC T. SCHNEIDERMAN
            Attorney General of the State of New York
            120 Broadway
            New York, NY 10271

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8│29│14

**Sweet, D.J.**

Reginald McFadden ("McFadden") pro se has moved under the June 6, 1996 Clarkson Consent Decree ("Consent Decree") and on the October 23, 2003 order (the "October 23 Order") in this action for order of civil contempt for violating the Consent Decree.  Based on the facts and conclusions set forth below, the motion is denied.

**Prior Proceedings**

McFadden has filed three different versions of his motion for contempt, September 8, 2013, October 24, 2013 and December 26, 2013.

McFadden is an inmate who has been incarcerated in facilities of the New York State Department of Corrections and Community Supervision ("DOCCS") while serving an 89 year to life sentence for rape in the first degree, burglary in the first degree, robbery in the first degree, kidnapping in the first degree, aggravated sexual abuse in the first degree, assault in the second degree, grand larceny in the fourth degree, murder in the second degree (two counts), and criminal possession of

1

stolen property in the third degree.  His motion papers appear
to set forth the following allegations.

- In 2000/2001 he was designated as HL-10 (deaf) by an
  audiologist contracted by DOCCS, Keith Walsh ("Walsh"),
  and prescribed hearing aids.  (October 24, 2013 Amended
  Affidavit ("October 2013 Affidavit") ¶¶ 8-10, 12;
  December 26, 2013 Affidavit ("December 2013 Affidavit")
  ¶¶ 1-2.)

- After Walsh examined him, DOCCS had a different
  audiologist conduct an examination to "undermin[e]"
  Walsh's diagnosis.  (October 2013 Aff. ¶ 11.)  The date
  of this examination, where it occurred, and who the
  audiologist was are not set forth.

- On February 12, 2007, he was allegedly assaulted by a
  corrections officer "due in part of [sic] [McFadden's]
  disability" and one of his hearing aids was allegedly
  damaged.  (December 2013 Aff. ¶ 3.)  The identity of this
  purported corrections officer, where the alleged assault
  occurred, and how these events concern the Consent Decree
  are not set forth.

- He appears to claim that there was a "practice or custom
  of officials destroying an inmate's hearing aids and eye-

2

glasses to prevent identifying attackers," but who was
responsible for, or engaged in, the purported "practice
or custom" in question is not set forth.  (December 2013
Aff. ¶ 16.)

- Prior to October 2008, he had alleged problems with
replacing damaged hearing aids and receiving replacement
batteries while at Clinton Correctional Facility (located
in the Northern District of New York) ("Clinton").
(October 2013 Aff. ¶¶ 12-14.)  The identity of Clinton
employees he believes were responsible is not set forth.

- In October 2008, he was allegedly transferred to Auburn
Correctional Facility (located in the Northern District
of New York) ("Auburn") without being examined by an
audiologist.  (October 2013 Aff. ¶¶ 14-15.)

- Prior to and through November 2008, an ear infection was
allegedly not properly treated.  (December 2013 Aff. ¶¶
4-7.)  Who was purportedly responsible for this alleged
lack of proper treatment is not set forth.

- While he was at Auburn in 2010, audiologist Joseph Gullo
("Gullo") only replaced one hearing aid in a set that
needed replacement.  (October 2013 Aff. ¶ 16; December
2013 Aff. ¶ 9.)

3

- "While waiting hearing aids" (at Auburn), he was assaulted from behind by a mentally ill inmate and asserts that this assault was "due to the lack of proper hearing aids." (October 2013 Aff. ¶ 16; December 2013 Aff. ¶ 9.) After receiving a complete set of hearing aids it "was difficult to re-order batteries." (October 2013 Aff. ¶ 17.)

- While being treated for a "massive heart attack" at a State University of New York hospital during an unidentified timeframe (though presumably when McFadden was at Auburn), unnamed "DOCCS officials" removed his hearing aids "to prevent [him from] hearing their communication about defrauding the State over overtime." (October 2013 Aff. ¶ 18; December 2013 Aff. ¶ 17.) How long his hearing aids were allegedly removed from him is not set forth.

- In October 2011, unnamed officers (also presumably at Auburn) retaliated against him for complaining about the events described above by filing a false report (which was dismissed in 2012) and removing his hearing aids. (October 2013 Aff. ¶ 19.)

- On August 1, 2012, the same unnamed officers destroyed his hearing aids and filed an additional false report. (October 2013 Aff. ¶ 20.)

- To cover up "official misconduct," he was "labeled" as having a mental illness and was placed under mental health observation." (December 2013 Aff. ¶¶ 17-18, 32-37.)  Who was responsible for these actions and how they related to the Consent Decree is not set forth.

- On or about August 10, 2013, "defendant Marinno" [sic], allegedly a Special Housing Unit ("SHU") counselor, failed to follow DOCCS' Directive 2612 in a manner not set forth.  (December 2013 Aff. ¶ 21.)

- He was then taken to Southport Correctional Facility (located in the Western District of New York) ("Southport") where unnamed medical staff ignored his hearing loss and medical records were fabricated. (October 2013 Aff. ¶ 21.)  How long his "hearing loss" was allegedly ignored, or any detail regarding his claim that medical records were fabricated, is not set forth.

- "Defendant" Bruce Blendon ("Blendon") was aware of his hearing problems when he was placed in disciplinary confinement (SHU) at Southport.  (October 2013 Aff. ¶ 25.)  How this constituted wrongdoing on Blendon's part

5

or how Blendon allegedly violated the Consent Decree is
not set forth.

- "Defendants" Nurse Bunning ("Bunning") and PRA Graf
  ("Graf") ignored his Americans with Disabilities Act
  ("ADA") request for reasonable accommodations when he was
  returned to SHU and "defendant" Noeth[1] ("Noeth")
  attempted to conduct a Tier III disciplinary hearing, but
  that the hearing was ultimately delayed 109 days.
  (October 2013 Aff. ¶ 26.)  No factual allegations
  describing how Bunning, Graf, or Noeth violated the
  Consent decree are set forth.[2]  Allegations with respect
  to defendant "Sgt. Condon" and a defendant Correction
  Officer are set forth without detail.  (December 2013
  Aff. ¶ 30.)

- An ADA reasonable accommodation request was filed with
  "defendant" Brad Thompson ("Thompson") and "defendant"
  Dr. Rao who falsely stated that McFadden has "no hearing
  difficulty."  (October 2013 Aff. ¶ 27.)  No factual

---

[1] It appears that this is a reference to Captain Noeth of Attica Correctional
Facility (in the Western District of New York) ("Attica"), where the Tier III
hearing was conducted.  (See Buther Decl. Ex. M.)

[2] The hearing was delayed to obtain new hearing aids to replace those that
McFadden claimed were lost or destroyed.  At the hearing, McFadden conceded
that he had a hearing aid and was not having any sensory problems.  (See
Harben Decl. Ex. G.)

allegations describing how either Thompson or Dr. Rao

violated the Consent Decree are set forth.

- Despite Dr. Rao's "false" claim, he had McFadden examined

  by an audiologist twice.  (October 2013 Aff. ¶ 28.)  No

  factual allegations describing how these alleged actions

  violated the Consent Decree are set forth.

- On September 25, 2012, "defendant" audiologist Gullo

  "conspire[d]" with unnamed "others" by prescribing a

  hearing aid for McFadden, but not certifying him as HL-10

  (deaf) so that McFadden would not be a Clarkson class

  member.  (October 2013 Aff. ¶ 29; see also December 2013

  Aff. ¶¶ 21-23.)  No factual allegations describing how

  Gullo violated the Consent Decree are set forth.

- On October 3, 2012, he provided a counselor (illegible

  name) with a copy of Walsh's 2001 findings, which the

  counselor never returned to him.  (October 2013 Aff. ¶

  30.)  No factual allegations describing how this

  counselor violated the Consent Decree are set forth.

- On August 8, 2013, an ADA reasonable accommodation

  request for batteries and a "shake awake" alarm clock was

  denied by "defendant" Michalick ("Michalick").  (October

  2013 Aff. ¶ 31.)  No facts describing how this alleged

  action violated the Consent Decree are set forth.

7

- "Defendant" Bradt ("Bradt") violated Due Process in not following DOCCS Directive 2612 on an unidentified date at an unidentified location.  (October 2013 Aff. ¶ 32.)  No facts describing how Bradt violated the Consent Decree are set forth.

        The instant motion was marked fully submitted on April 21, 2014.

## Applicable Standard

        This Court has stated "[t]he purpose of a civil contempt is to compel a reluctant party to do what was ordered of her."  Figueroa v. Dean, No. 99-CV-12457, No. 99-CV-12458, 2002 WL 31426205, *4 (S.D.N.Y. Oct. 30, 2002).  Courts are not "entitled to expand or contract the agreement of the parties as set forth in the consent decree."  Berger v. Heckler, 771 F.2d 1556, 1558 (2d Cir. 1988).  Courts must narrowly construe the terms of a consent decree, and not impose supplementary obligations on the parties.  Barcia v. Sitkin, 367 F.3d 87, 106 (2d Cir. 2004).

"The imposition of a civil contempt order is a severe sanction subject to a higher standard of proof than the 'preponderance of the evidence' standard applicable to ordinary cases." King v. Allied Vision Ltd., 155 F.R.D. 440, 448 (S.D.N.Y. 1994). Rather, a plaintiff must prove a civil contempt with clear and convincing evidence. New York State Nat'l. Org. For Women v. Terry, 886 F.2d 1339, 1351 (2d Cir. 1989). A court's inherent power to hold a party in civil contempt should be exercised only when: (1) the order the party allegedly failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the party has not diligently attempted in a reasonable manner to comply. Id.; see also Scottish Air Int'l. v. British Caledonia Group, PLC, 867 F. Supp. 262, 266-67 (S.D.N.Y. 1994).

More specifically, paragraph 52 of the Consent Decree states in relevant part:

> In an effort to avoid motions for contempt and enforcement, defendants DOC[C]S, OMH and Parole shall identify by title an ombudsperson responsible for handling requests for accommodations made by plaintiff class members through class counsel. Such requests shall be acted upon within fifteen days of receipt of a written request by plaintiff's counsel, unless more expeditious relief is required.

9

Consent Decree ¶ 52.  Additionally, the October 2003 order

requires class members "to first submit their complaints

for resolution" to the ombudsperson for a determination

whether the complainant was "a member of the class covered

by the decree and whether a violation occurred" before

filing a motion for contempt or enforcement.  October 2003

Order ¶ 3; see also Smith v. Masterson, No. 05-CV-2897,

2006 U.S. Dist. LEXIS 70868, *23 (S.D.N.Y. Sep. 29, 2006).

The 2003 Order was motivated by a concern that prisoners

were filing motions for contempt or enforcement of the

Consent Decree without first addressing the issue with

prison officials.  See Smith, 2006 U.S. Dist. LEXIS 70868

at *23.


**Any Claims That Pre-Date September 8, 2010 Are Barred**


          To the extent that the motion is deemed to make any

claims that concern matters that pre-date September 8, 2010

(reference to pre-September 8, 2010 events appear to be for

background purposes), the doctrine of laches should be applied

to bar any such potential claims.  See, e.g., Brennan v. Nassau

County, 352 F.3d 60, 63-64 (2d Cir. 2003) (laches applied to

consent decree).  A three-year cut-off is appropriate because

10

all the applicable statutes of limitations here are three-years.
See, e.g., Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191
(2d Cir. 1996) ("Although laches is an equitable defense,
employed instead of a statutory time-bar, analogous statutes of
limitation remain an important determinant in the application of
a laches defense . . . . The statute of limitations  . . .
determines which party has the burden of proving or rebutting
the defense.") (citations omitted).


        Factors relevant to determining whether laches applies
include whether McFadden knew of alleged misconduct, whether he
inexcusably delayed in taking action, and whether respondent
here was prejudiced by any delay.  See Brennan, 352 F.3d at 64.
Here, McFadden was clearly aware of whatever problems he asserts
existed prior to September 8, 2010 (although his motion does not
attribute any of these problems to any particular DOCCS employee
or medical specialist retained by DOCCS) and, given his history
of extreme litigiousness (see McFadden v. Wilhelm, No. 03-CV-
8341, 2007 U.S. Dist. LEXIS 30670 (S.D.N.Y. Apr. 20, 2007) and
June 24, 2008 Order in McFadden (Harben Decl. Ex. D.)), there is
no reason why he would not have raised these issues earlier.
Finally, McFadden's delay in raising any such complaints has
prejudiced respondents' ability to address them because of faded

11

memories, departed employees, and lost documentation.  Failure to have raised such issues with the Clarkson Ombudsperson may have prevented DOCCS from conducting a proper investigation while memories were still fresh and relevant records more readily accessible and could be internally resolved.

To the extent that any such references to matters pre-dating September 8, 2010 are viewed as causes of action, rather than claims under the equitable provision of the Consent Decree, any such claims are time-barred under Section 1983, the ADA, and the Rehabilitation Act (the three statutes that form the basis for the Consent Decree) and, accordingly, may not be raised here.  See Connolly v. McCall, 254 F.3d 36, 40-41 (2d Cir. 2001) (noting three-year statute of limitations under Section 1983);; Morse v. University of Vermont, 973 F.2d 122, 127 (2d Cir. 1992) (holding that Rehabilitation Act claims are subject to the same statute of limitations as Section 1983 claims); Keitt v. New York City, 882 F. Supp. 2d 412, 450 (S.D.N.Y. 2011) (three-year statute of limitations for ADA claims).

**McFadden Lacks Clarkson Standing**

        This Court has held that a movant "who is not a party
to or a member of the class protected by a consent decree has no
standing to bring a motion for contempt alleging violations of
the decree." Arce v. O'Connell, 427 F. Supp. 2d 435, 441
(S.D.N.Y. 2006). As an inmate who has been designated as HL-30
(see Buther Decl. ¶ 28), McFadden does not qualify as a Clarkson
class member. See Arce, 427 F. Supp. 2d at 438, 442-43 (inmate
designated as HL-30 not a Clarkson class member).


        McFadden claims audiologist Walsh at one time
designated him as having more serious hearing loss than HL-30.
That designation is not dispositive as subsequent audiologists,
John Serhan ("Serhan") and Gullo have since diagnosed McFadden
as being HL-30 or, perhaps, not hearing impaired at all. (See
Buther Decl. ¶¶ 15-21, 24-25, 28-29, 34.) The issue of Walsh's
diagnoses has been addressed in prior litigations by other
inmates, finding them to be insufficient to determine that such
inmates are members of the Clarkson class in light of diagnoses
by other audiologists to the contrary. See, e.g., Smith v.
Masterson, 538 F. Supp. 2d 653, 658-61 (S.D.N.Y. 2008) (finding
that plaintiff was not a member of the Clarkson class despite
hearing impairment diagnosis by audiologist Walsh).


                                13

As McFadden is not a Clarkson class member, he has no standing to recover for contempt of that decree or to demand that sanctions be imposed, as he cannot, by definition, have sustained any injury to be redressed.   See generally Arce, 427 F. Supp. 2d at 438, 442-43.

## McFadden Failed To Meet The Consent Decree Prerequisites

It is undisputed that McFadden failed to contact the designated Consent Decree Ombudsperson regarding his complaints outlined in his contempt motion, as is required under paragraph 52 of the Consent Decree (Harben Decl. Ex. A) and the October 23 Order (Harben Decl. Ex. B), despite being aware of the requirement that he do so.  (See Buther Decl. ¶ 7; see also March 10, 2014 Decl. of Nancy Heywood ("Heywood Decl.") ¶ 4.) As a result, the instant motion is denied.  See, e.g., Myers v. Andzel, No. 06-CV-14420, 2008 U.S. Dist. LEXIS 7906 (S.D.N.Y. Feb. 1, 2008) (contempt motion under Clarkson denied where movant failed to contact the DOCCS Ombudsperson regarding complaints prior to filing motion); Clarkson v. Coughlin, No. 91-CV-1792, 2006 U.S. Dist. LEXIS 9676 (S.D.N.Y. Mar. 6, 2006) (providing notice to DOCCS inmates of Clarkson requirements).

14

**McFadden Has Not Established Clear and Convincing Evidence Of A Consent Decree Violation**

The evidence has established that McFadden was provided whatever accommodations he was entitled to under DOCCS Directive 2612, which itself incorporates much of the Consent Decree. See Figueroa v. Dean, 425 F. Supp. 2d 448, 451 (S.D.N.Y. 2006) (noting that DOCCS Directive 2612 contains "many, if not all" of the Consent Decree requirements). McFadden was provided with numerous hearing aids over the years, batteries (and replacement batteries) for those hearing aids as well as numerous consultations with outside audiologist to monitor his hearing issues.  (See Buther Decl. ¶¶ 23-28.)[3]  He is not entitled to accommodations beyond those already provided to him by DOCCS, nor is he entitled to be housed in a facility designated for HL-10 and HL-20 inmates, as he is an HL-30 inmate and suitable for housing in any maximum security facility.  (Id. at ¶¶ 22, 36-38.)

McFadden has not established a violation of the Consent Decree, nor sufficient notice as to what he is claiming.

---

[3] At one time, McFadden was found to be hoarding numerous hearing aids in his cell when, in fact, he was only entitled to one set of hearing aids at any given time.  (Id. at ¶ 31.)  This calls into question all of his claims of lost or confiscated hearing aids made in this motion and refutes any notion that he has demonstrated contempt by "clear and convincing evidence."

15

For example, various unnamed "defendants" mentioned in paragraphs 18 through 21 of his October 2013 Affidavit purportedly took action against him in some manner, but given the lack of detail these allegations cannot even be investigated.  Similarly, a "defendant" Bradt is alleged to have "violated Due process" but McFadden does not describe how, when, or where this was accomplished.  (October 2013 Aff. ¶ 32.)  How the Consent Decree was allegedly violated is not explained nor can it even be inferred from McFadden's papers.

Allegations regarding the alleged failure of medical staff at Southport Correctional Facility to assist McFadden with his needs are also rebutted by the record.  After McFadden complained that he did not have his hearing aids upon his arrival at Southport, appointments were scheduled with an audiologist, he was fitted for new hearing aids, and ultimately received them.  (See Buther Decl. ¶¶ 32-34.)

Many of McFadden's other allegations do not relate to Clarkson and are thus improperly raised here even if McFadden did have standing under Clarkson.  For example, in paragraph 16 of the October 2013 Affidavit, McFadden claims he was assaulted from behind by a mentally ill inmate while "waiting for hearing

16

aids" at some point in 2010-2011.  (See also December 2013 Aff.
¶ 9.)  This has nothing to do with Clarkson and allegedly took
place in the Northern District of New York while McFadden was at
Auburn and, accordingly, venue would be improper here even if
this was the subject of a lawsuit.  Indeed, this claim does not
claim that anyone at DOCCS was responsible for this mentally ill
inmate allegedly attacking McFadden.

McFadden has also alleged that in August 2012, unnamed
officers retaliated against him by issuing a false report.  In
reality, while on an outside hospital visit, McFadden used a
fake gun in an attempt to escape and assaulted officers in the
process, for which he was disciplined.  (See Buther Decl. ¶¶ 32-
33.)  Aside from having nothing to do with Clarkson, these
claims also arose in the Northern District of New York as
McFadden was incarcerated at Auburn.  Accordingly, these claims
are improperly venued.

McFadden also appears to imply that he may not have
had his hearing aids at his Tier III disciplinary hearing
regarding his escape attempt and assault on DOCCS staff that
commenced on November 30, 2012 at Attica, but there is evidence
that he received new hearing aids on November 16, 2012.  (See

17

Buther Decl. ¶ 34; Harben Decl. Ex. G.)   Whether McFadden feels

that his Tier III hearing was excessively delayed while DOCCS

had him fitted for new hearing aids (which he demanded prior to

the hearing) is irrelevant to Clarkson.   Any complaints about

alleged delays are venued in the Western District of New York,

where the Tier III hearing was conducted, or in an Article 78

proceeding.

        As for complaints regarding Southport (also located in

the Western District) regarding his lost hearing aids after his

escape attempt, there is evidence that during the time in

question, DOCCS was taking reasonable steps to replace the

hearing aids McFadden claims were lost.   (See Buther Decl. ¶¶

32-33.)

        In sum, McFadden's difficult to discern claims fail to

demonstrate under any standard of proof contempt of the Consent

Decree.   Indeed, the record indicates that DOCCS officials

worked reasonable and diligently to address McFadden's limited

needs during the times relevant to this motion.   (See generally

Buther Decl.)

**Conversion To A Separate Lawsuit Is Not Warranted**

18

McFadden appears to seek to convert this motion into a separate lawsuit seeking damages. By orders dated October 23, 2003 and December 8, 2011, the Court determined that if an inmate is seeking money damages, a separate lawsuit must be initiated, but if no damages are sought, a contempt motion may proceed.

Moreover, McFadden has been barred in the Southern District from filing Section 1983 lawsuits without specific court permission due to his long history of frivolous and meritless lawsuits. See McFadden v. Wilhelm, No. 03-CV-8341, 2007 U.S. Dist. LEXIS 30670 (S.D.N.Y. Apr. 20, 2007) and June 24, 2008 Order in McFadden (Harben Decl. Ex. D.).

Furthermore, to the extent McFadden is using "sanctions" interchangeably with "damages" in a contempt proceeding, prior to conducting a damages analysis, a court must find that the movant established that (1) the contemnor failed to comply with the decree that is clear and unambiguous and leaves no uncertainty, (2) the proof of noncompliance is clear and convincing and (3) the contemnor did not diligently attempt to comply in a reasonable manner. Terry, 886 F.2d at 1351; King

19

v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995).  The
Court must look to the four corners of the decree and determine
whether the evidence submitted by the movant constitutes a
violation of the provisions as already understood and
interpreted.  King, 65 F.3d at 1058.  Courts exercise discretion
in devising remedies and balance the equities of the interests
of the entities and individuals that the remedies that will
effect.  See United States v. Dist. Council of New York City &
Vicinity of United Broth. of Carpenters & Joiners of Am., 592 F.
Supp. 2d 708, 718 (S.D.N.Y. 2009); Essex County Jail Annex
Inmates v. Treffinger, 18 F. Supp. 2d 445, 451-52 (D.N.J. 1998).


     The purpose of the remedies is to ensure future
compliance with the decree and any compensatory sanctions must
be limited to actual losses sustained as a result of the
contumacy.  See Perfect Fit Indus., Inc. v. Acme Quilting Co.,
Inc., 646 F.2d 800, 810 (2d Cir. 1981); Shuffler v. Heritage
Bank, 720 F.2d 1141, 1148-49 (9th Cir. 1983).  Punitive fines
cannot be imposed.  Carpenters, 592 F. Supp. 2d at 720.


     Here, because McFadden has failed to establish by
clear and convincing evidence that any DOCCS official violated
the Consent Decree and that they did not make reasonable and

diligent attempts to meet its requirements, he is not entitled
to any damages.   There is evidence that at all times relevant to
this motion DOCCS officials attempted to comply in a reasonable
and diligent manner with DOCCS Directive 2612, which covers HL-
30 inmates (the failure of which would not be subject to
contempt under Clarkson) and, indeed, had no duty to comply with
the Consent Decree with regard to McFadden because he is not a
class member.   Additionally, McFadden has failed to show that he
suffered any actual losses.


**The Defendants Are Not Subject To Contempt Under Clarkson**


        McFadden has named various DOCCS officials as
"defendants" in his motion, but none of these named officials
have been served with McFadden's motion papers. None of these
purported "defendants" have titles at DOCCS that correspond to
the titles of the named defendants in this action, which would
be relevant for the purposes of official capacity substitution
under Fed. R. Civ. P. 25(d).


21

## Conclusion

Based on the conclusions set forth above, the motion of McFadden is denied.

It is so ordered.

Dated:     New York, New York
           August 27, 2014

                                        Robert W. Sweet
                                           U.S.D.J.