| | | TITLE | NO. 2612 |
|---|---|---|---|
| **NEW YORK STATE** Corrections and Community Supervision **DIRECTIVE** | | Inmates With Sensorial Disabilities | DATE 12/27/2018 |
| SUPERSEDES DIR. #2612; Dated 04/30/2015 | | DISTRIBUTION A, B | PAGES PAGE 1 OF 15 | DATE LAST REVISED |
| REFERENCES (Include but are not limited to) Directives #2614, #4040; Americans with Disabilities Act; Criminal Procedure Law; ACA Expected Practices 4-4142, 4-4143, 4-4144, 4-4305, 4-4429, 4-4429-1, 4-4497 | | APPROVING AUTHORITY [signature] | |

**I.  POLICY**: Title II (Subtitle A) of the Americans with Disabilities Act (ADA) prohibits state and local entities from discriminating against any qualified individual with a disability in their programs, services, and activities. Therefore, the programs and services provided to inmates by this agency, or those that may be contracted to other entities, must ensure accessibility and usability by qualified inmates in the most integrated setting. The Department of Corrections and Community Supervision (DOCCS) is required to make reasonable accommodations or modifications to existing policies and procedures in order to allow qualified inmates with disabilities the same opportunity as non-disabled inmates, unless to do so would be an undue burden to the Department, cause a fundamental alteration to a program, or compromise the security of the facility. This directive addresses inmates with sensorial disabilities, that is, impairments to hearing and seeing (see Directive #2614, "Reasonable Accommodations for Inmates with Disabilities," for procedures addressing inmates with all other disabilities).

**II.  DEFINITIONS**

   A.  <u>Individual with a Sensorial Disability</u>:  Anyone who has a sight or hearing impairment that substantially limits one or more of the person's major life activities and meets the definition of legal blindness, severe visual impairment, deaf, and/or hard of hearing as defined in Sections II-D, E, F, or G below;

   **Major life activity**:  Includes functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, learning, and working.

   **Substantially limits**:  Means that the impairment imposes a barrier in the performance of a major life activity.

   The determination of whether an impairment substantially limits a major life activity shall be made without regard to improvements realized by use of the following:

   1.  Medication, medical supplies, equipment, or appliances, low-vision devices (which do not include ordinary eyeglasses or contact lenses), prosthetics including limbs and devices, hearing aids, and cochlear implants or other implantable hearing devices;

   2.  Use of assistive technology;

   3.  Reasonable accommodations or auxiliary aids or services; and

   4.  Learned behavioral or adaptive neurological modifications.

> EXCEPTION: The improvement made to sight by the use of ordinary eyeglasses or contact lenses SHALL be considered in determining whether impairment limits a major life activity.

B. <u>Reasonable Accommodation</u>: Any change in the environment, or the manner in which tasks are completed, that enables a qualified individual with a disability to participate in a program or service. Such accommodation should not impose any undue hardship on the Department. Reasonable accommodations might include the following:

  1. Making existing facilities readily accessible to meet a particular individual's needs;
  2. Providing readers, interpreters, note takers, sighted guides, daily living skill aides; and
  3. Acquisition or modification of equipment or devices.

  A more complete list of reasonable accommodations is included on Form #2612C, "Reasonable Accommodations For The Sensorially Disabled."

C. <u>Qualified Individual with a Disability</u>: An individual with a disability who, with the assistance of a reasonable accommodation, is able to meet the essential eligibility requirements for the receipt of services or the participation in programs or activities.

D. <u>Severe Visual Impairment (V230)</u>

  1. Visual acuity of 20/70 or less in the BETTER eye with best correction; or
  2. Visual field of no greater than 40 degrees in the BETTER eye.

E. <u>Legal Blindness (B240)</u>

  1. Visual acuity of 20/200 or less in the BETTER eye with best correction; or
  2. Visual field of no greater than 20 degrees in the BETTER eye.

F. <u>Deaf (HL10)</u>: Severe profound hearing loss in the BETTER ear unaided of at least 70 dB as measured by the Pure Tone Audiometry (PTA - 500, 1000, and 2000 Hz) or unaided Speech Recognition Threshold (SRT) or primarily relies on visual communication such as sign language, writing, or visual cues or gestures (does not include unilateral deafness).

G. <u>Hard of Hearing (HL20)</u>: Hearing loss in the BETTER ear unaided of at least 40 dB but less than 70 dB as measured by the Pure Tone Audiometry (PTA - 500, 1000, and 2000 Hz) or unaided Speech Recognition Threshold (SRT) or functional hearing communication difficulties with proper amplification as determined by a person with expertise in the field of deafness.

H. <u>Non-Significant Hearing Loss (HL30)</u>: Hearing loss in the BETTER ear unaided of less than 40 dB as measured by the Pure Tone Audiometry (PTA - 500, 1000, and 2000 Hz) or unaided Speech Recognition Threshold (SRT). Reasonable accommodations for inmates with non-significant hearing loss include hearing aid(s), batteries, amplified phone, and preferred seating; these inmates do not need to be transferred to a designated facility.

    I.   <u>Qualified Sign Language Interpreting Services</u>: A sign language interpreter certified by the National Registry of Interpreters for the Deaf or other National or New York State credentialing authority, or a sign language interpreter who is able to interpret effectively, accurately, and impartially both receptively and expressively, using any necessary specialized vocabulary. The qualifications of an interpreter are determined by the actual ability of the interpreter in a particular interpreting context to facilitate effective communication. Except as otherwise indicated below, qualified interpreters may include inmates and correctional staff, including Correction Officers and volunteers, when their skills meet the above definition and factors such as emotional or personal involvement and considerations of confidentiality will not adversely affect their ability to interpret effectively, accurately, and impartially; or jeopardize the safety and security of the inmate.

    J.   <u>TTY</u>: A telephone communication device for the deaf; uses an electronic transmission of text.

    K.   <u>Amplified Telephone Modification</u>: This might include T coil on a hearing aid and/or volume control telephone.

    L.   <u>Closed-Caption Decoder</u>: An apparatus which subtitles the spoken text on television or film.

    M.   <u>Triggering Event</u>

        1.   A diagnosis as Hearing Loss/Deaf (HL10), Hearing Loss/Hard of Hearing (HL20), Legal Blindness (B240), or Severe Visual Impairment (V230), or a significant change in a sensorial disabled inmate's hearing or visual function as determined by either a DOCCS medical professional or an outside medical specialist;

        2.   Arrival at a new DOCCS facility designated for inmates with a sensorial disability;

        3.   A change in the inmate's activities, such as placement in a new vocational, educational, or recreational activity, that might require a change in accommodations; and

        4.   Any other change in an inmate's circumstance that would make reassessment of reasonable accommodations appropriate.

    N.   <u>Large Print</u>: Typed text enlarged to a minimum of font size 14.

**III. FACILITIES ACCOMMODATING INMATES WITH SENSORIAL DISABILITIES**

    A.   DOCCS shall provide qualified sign language interpreting services in each facility in which an inmate is housed who communicates primarily by sign language. Inmates who are deaf or hard of hearing, who primarily communicate in sign language, shall have reasonable access to qualified sign language interpreters whenever necessary, as provided in this directive.

    B.   When male inmates with sensorial disabilities are received in reception facilities, they shall be transferred immediately to Downstate or Ulster Correctional Facility for reception and classification.

   C.  Inmates with sensorial disabilities (i.e., those that meet the definition of Hearing Loss/Deaf (HL10), Hearing Loss/Hard of Hearing (HL20), Legal Blindness (B240), or Severe Visual Impairment (V230), as defined in this directive) shall be referred for transfer to one of the following designated facilities which can accommodate their needs:

NOTE:  Inmates that meet the definition of Hearing Loss/Non-Significant (HL30) need only hearing aids, batteries, preferred seating, and amplified telephone, and do not need placement in a designated facility.

1. <u>Downstate Correctional Facility</u>:  Maximum security reception center that will process all maximum-security male inmates with sensorial disabilities.  Sign language services will be provided, when necessary.  There is an initial classification process that will be expeditiously completed and the inmate will then be transferred to a designated facility for further evaluation.  Downstate CF will also process medium and minimum-security male inmates with sensorial disabilities in need of the Office of Mental Health (OMH) Level 1 or 2 services, medical, or programmatic needs which cannot be met at Ulster CF.

2. <u>Ulster Correctional Facility</u>:  Medium security reception center that will process medium and minimum-security male inmates with sensorial disabilities.  Sign language services will be provided, when necessary.  There will be an initial classification process that will be expeditiously completed and the inmate will then be transferred to a designated facility for further evaluation.  Inmates in need of OMH Level 1 or 2 services, medical, or programmatic needs which cannot be met at Ulster CF will be transferred to Downstate CF.

3. <u>Bedford Hills Correctional Facility</u>:  Maximum security reception center and general confinement facility that will process all female inmates with sensorial disabilities.  Sign language services will be provided, when necessary.  The staff will complete an extended assessment and a needs assessment on the functional ability of inmates who are deaf (HL10), hard of hearing (HL20), legally blind (B240), and/or severely visually impaired (V230), if those assessments have not already been completed.  Needs assessments will be updated upon a triggering event.  Staff will also make placement, program, and reasonable accommodation recommendations.  Bedford Hills CF will share staff with expertise regarding sensorial disabilities with Taconic CF, when necessary.

4. <u>Eastern New York Correctional Facility</u>:  Maximum security, male, general confinement facility that also has the capability to meet the needs of inmates with sensorial disabilities.  Eastern CF operates a 31-bed residential unit for those individuals who cannot safely function in the general population of a prison or require a higher level of care.  Sign language services will be provided, when necessary.  The staff will complete an extended assessment and a needs assessment on the functional ability of inmates who are deaf (HL10), hard of hearing (HL20), legally blind (B240), and/or severely visually impaired (V230), if those assessments have not already been completed.

Needs assessments will be updated upon a triggering event. Staff will also make placement, program, and reasonable accommodation recommendations. Eastern CF will share staff with expertise regarding sensorial disabilities with Sullivan CF, Woodbourne CF, Downstate CF, and Ulster CF when necessary.

5. <u>Wende Correctional Facility</u>: Maximum security, general confinement facility that also has the capability to meet the needs of male inmates with sensorial disabilities. Wende CF also operates a Regional Medical Unit (RMU). Sign language services will be provided when necessary.

    The staff will complete an extended assessment and a needs assessment on the functional ability of inmates who are deaf (HL10), hard of hearing (HL20), legally blind (B240), and severely visually impaired (V230), if those assessments have not already been completed. Needs assessments will be updated upon a triggering event. Staff will also make placement, program, and reasonable accommodation recommendations. Wende CF will share staff with expertise regarding sensorial disabilities with Wyoming CF, Five Points CF, and Lakeview CF when necessary.

6. <u>Sullivan Correctional Facility</u>: Maximum security, general confinement facility that also has the capability to meet the needs of inmates with sensorial disabilities. Sign language services will be provided when necessary. The staff will complete an extended assessment and a needs assessment on the functional ability of inmates who are deaf (HL10), hard of hearing (HL20), legally blind (B240), and severely visually impaired (V230), if those assessments have not already been completed. Needs assessments will be updated upon a triggering event. Staff will also make placement, program, and reasonable accommodation recommendations. Sullivan CF will share staff with expertise regarding sensorial disabilities with Eastern CF, Woodbourne CF, Downstate CF, and Ulster CF when necessary.

7. <u>Woodbourne Correctional Facility</u>: Medium security, general confinement facility that also has the capability to meet the needs of male inmates with sensorial disabilities. Sign language services will be provided when necessary. The staff will complete an extended assessment and a needs assessment on the functional ability of inmates who are deaf (HL10), hard of hearing (HL20), legally blind (B240), and severely visually impaired (V230), if those assessments have not already been completed. Needs assessments will be updated upon a triggering event. Staff will also make placement, program, and reasonable accommodation recommendations. Woodbourne CF will share staff with expertise regarding sensorial disabilities with Eastern CF, Sullivan CF, Downstate CF, and Ulster CF when necessary.

8. <u>Wyoming Correctional Facility</u>: Medium security, general confinement facility that also has the capability to meet the needs of male inmates with sensorial disabilities. Sign language services will be provided when necessary. The staff will complete an extended assessment and a needs assessment on the functional ability of inmates who are deaf (HL10), hard of hearing (HL20), legally blind (B240), and severely visually impaired (V230), if those assessments have not already been completed. Needs assessments will be updated upon a triggering event.

    Staff will also make placement, program, and reasonable accommodation recommendations.  Wyoming CF will share staff with expertise regarding sensorial disabilities with Wende CF and Lakeview CF when necessary.

9. <u>Lakeview Shock Incarceration Correctional Facility (Males and Females)</u>:  A minimum-security facility that will accommodate the shock incarceration population.  Sign language services will be provided, when necessary.  Lakeview SICF will also accommodate inmates who are legally blind (B240) or severely visually impaired (V230), who are otherwise eligible for Shock and do not require mobility assistance.

10. <u>Taconic Correctional Facility</u>:  A female medium security facility that will provide inmate access to Bedford Hills CF staff with expertise regarding sensorial disabilities.  Sign language services will be provided, when necessary.  Taconic CF will also provide reasonable accommodations to female medium eligible inmates who are deaf (HL10), hard of hearing (HL20), legally blind (B240), and severely visually impaired (V230).

11. <u>Albion Correctional Facility</u>:  Female, medium security, and Work Release.  This facility has the ability to accommodate only hard of hearing inmates (HL20); NOT deaf (HL10), legally blind (B240), or severely visually impaired (V230) inmates.  Sign language services will be provided when necessary.

12. <u>Five Points Correctional Facility</u>:  Maximum security, double celled in general population, and wheelchair accessible.  Five Points' Residential Mental Health Unit (RMHU) and Intermediate Care Program (ICP) are OMH Level 1.  Inmates in wheelchairs may also be OMH Level 1.  This facility has the ability to accommodate inmates who are hard of hearing (HL20), NOT deaf (HL10), NOT severely visually impaired (V230), NOT legally blind (B240) , in general population.  On occasion, inmates who are sensorially disabled and need specialized mental health programming may be assigned, and reasonable accommodations will be provided, including sign language services when necessary, to participate in the ICP or RMHU.  These cases will be identified and approved on a case-by-case basis.

13. <u>Work Release Facilities:</u>  Facilities operating Work Release programs shall contract with a sign language interpreter or utilize sign language services when inmates requiring such services enter the program.  Reasonable accommodations, including sign language interpreting services, with outside entities such as employers or other community services, are the responsibility of the outside entities.  Reasonable accommodations, including the provision of sign language services for programs and services offered within the facility are the responsibility of the facility.  Work Release facilities will also accommodate inmates who are legally blind (B240) or severely visually impaired (V230), who are otherwise eligible for Work Release and do not require mobility assistance.

14. <u>Willard Drug Treatment Campus</u>:  Drug treatment campus operated by the Department to provide a program of intensive drug treatment services for individuals sentenced to parole supervision sentences pursuant to Section 410.91 of the Criminal Procedure Law or for certain parole violators.  Sign language services will be provided when necessary.

      Willard DTC will also accommodate inmates who are legally blind (B240) or severely visually impaired (V230), who are otherwise eligible for this program and do not require mobility assistance.

15. <u>Other Correctional Facilities</u>:  Facilities housing inmates with sensorial disabilities on a temporary basis shall be alerted by the sending facility of the special needs of the sensorially disabled inmates.  Sign language services will be provided when necessary.  Any questions on reasonable accommodations should be referred to the ADA Coordinator or the sending facility.

16. <u>All Correctional Facilities</u>

    a. Posters entitled "Inmates With Disabilities Notice of Rights Under the Americans With Disabilities Act," Form #2612A, describing the inmates' rights to reasonable accommodations will be posted in areas frequented by inmates, including mess halls, law libraries, recreation areas, housing units, guidance, medical, OMH, and OMH satellite units.

    b. The "Notice To All New York State Prisoners Who Are Deaf Or Hard Of Hearing Concerning Motions For Contempt And Enforcement Of The Clarkson v. Goord Consent Judgment," Form #2612D (English and Spanish versions), will be posted in all law libraries and housing units.

## IV. RECEPTION AND RETURNED PAROLE VIOLATORS - INITIAL CLASSIFICATION PROCEDURES

A. All inmates newly received into the custody of the Department and returned parole violators who wear hearing aids, have a history of hearing loss, have an observable behavior indicating hearing loss, appear to meet the definition of legally blind (B240) or severely visually impaired (V230) will be immediately transferred to Downstate or Ulster Correctional Facility (males) or Bedford Hills Correctional Facility (females) for classification and assessment.

B. Returned parole violators who have already been assessed as being deaf (HL10), hard of hearing (HL20), legally blind (B240), and/or severely visually impaired (V230) **MUST** be transferred to a designated facility.  The transfer request must clearly state the inmate's disability and that the inmate needs a designated facility.

C. During initial classification, Form #2612A will be given and explained to these inmates by appropriate guidance staff with experience in sensorial disabilities.  A sign language interpreter must be utilized for deaf or hard of hearing inmates whose primary means of communication is sign language.  Inmates will be advised of their rights to reasonable accommodation, which may include the following:  qualified sign language interpretive services; other auxiliary aids, services, or devices; and the methods to request said accommodations.

      They must also be advised of the procedures for grieving denials or modifications of requested accommodations.  Inmates who are legally blind (B240) or severely visually impaired (V230) will be given a large print copy of the form.

- D. The Guidance staff member explaining the Americans with Disabilities Act will also present Form #2612B, "Request for Reasonable Accommodation for Inmates with Sensorial Disabilities," to the inmate and provide assistance with completing it. Inmates who are legally blind (B240) or severely visually impaired (V230) will be given a large print copy of the form.

- E. Licensed medical staff will complete the medical verification section and return the form to the staff member who assisted the inmate in its completion. For deaf and hard of hearing inmates, medical staff will complete the medical verification section after reviewing the audiograms and audiologist recommendations. For blindness and/or severe visual impairments, licensed medical staff will complete the medical verification section after reviewing eye reports and/or vision reports.

    Questions on interpreting audiograms and audiologist recommendations should be referred to the primary care provider, or to staff with an expertise in the field of deafness, such as a sign language interpreter, vocational rehabilitation counselor, or audiologist. Questions on interpreting eye or vision reports should be referred to the instructor for the blind, vocational rehabilitation counselor, the optometrist, ophthalmologist, or vision specialist.

    If there is no documentation of a hearing or vision problem in the inmate's record, the inmate should be seen by the facility physician, physician's assistant, or nurse practitioner. If the physician determines the hearing or vision loss may be significant, the physician should request a consultation with an audiologist, optometrist, or ophthalmologist. Form #2901, "Audiologist Report," should be sent with the inmate to the audiologist for use. Form #3288, "Eye Record," should be sent with the inmate to the optometrist/ophthalmologist for use. The provider will document any relevant diagnosis in FHS1 using the appropriate FHS1 problem code.

- F. Guidance and medical staff members shall complete the Reasonable Accommodation Determination section of Form #2612B, basing their determination on their assessment of the inmate's limitations, the verification from medical, and their knowledge of accommodations and the inmate's preferences. The completed form will be placed in the guidance folder; a copy will be sent to medical and will be shared with OMH staff if the inmate is referred for OMH services. A copy of the completed form will also be sent to the Offender Rehabilitation Coordinator (ORC) for inclusion in the inmate's Community Supervision file and to the ADA Coordinator in Central Office. The reasonable accommodation determination will remain in effect unless modified by the receiving facility designated for the sensorially disabled.

- G. The "Notice To All New York State Prisoners Who Are Deaf Or Hard Of Hearing Concerning Motions For Contempt And Enforcement Of The Clarkson v. Goord Consent Judgment," Form #2612D, will be distributed to all incoming deaf or hard of hearing inmates.

V.  **ORIENTATION**: Form #2612A, "Inmates With Disabilities Notice of Rights Under The Americans With Disabilities Act," will be reviewed with inmates who are deaf (HL10), hard of hearing (HL20), legally blind (B240), and/or severely visually impaired (V230), by appropriate staff during orientation at <u>any new</u> facility. Posters described in Section IV-G above, Form #2612D, will be posted in all facilities.

VI. **ASSESSMENT PROCEDURES**: Upon completion of the reception program, inmates with hearing or vision disabilities who require adaptive equipment other than hearing aids or eye glasses will enter an evaluation period for assessment of:

- Vocational skills
- Academic level
- Functional abilities
- Medical assessment (vision specialist, audiologist)

Male inmates will be transferred to the Eastern New York Correctional Facility, Wende Correctional Facility, Sullivan Correctional Facility, or any other facility designated in this directive which has staff with expertise in the field of deafness and visual impairments for the assessment. Female inmates will remain at Bedford Hills Correctional Facility.

Upon completion of the assessment, utilizing the needs assessment form, inmates with sensorial disabilities will be assigned to the facilities identified in Section III, consistent with security, medical, and mental health level classifications.

VII. **EQUIPMENT AND SERVICES FOR THE DEAF AND HARD OF HEARING**

A. Facilities designated in Section III shall make available to inmates who are deaf (HL10) or hard of hearing (HL20) the auxiliary aids, services, and assistive devices as approved through the reasonable accommodation process which are necessary to facilitate full and effective participation in programs, activities, and services. Each facility shall provide reasonable accommodations which shall include, as necessary, qualified sign language interpreting services for those deaf or hard of hearing inmates who use sign language to communicate, and other auxiliary aids, services, and devices where appropriate.

B. Each designated facility will provide reasonable accommodations, which may include reasonable access to qualified sign language interpreting services for inmates who primarily communicate through sign language as defined in Section II-I, for the following:

1. Program participation, including educational, rehabilitative, vocational, employment within the facility, and special events for which the inmate who is deaf is otherwise qualified;

2. Grievance proceedings;

3. Administrative or disciplinary proceedings (including protective custody, involuntary protective custody, and administrative segregation hearings) including investigation and meetings with employee assistants, whenever an inmate who is deaf or hard of hearing is a party or witness, or in which a deaf or hard of hearing inmate may be subject to any sanction;

4. Temporary release consideration, if an interview with the inmate is required;

5. Reception and classification interviews and assessment;

6. Guidance call-outs

    a. Where either the inmate or the ORC seeks to discuss information which is confidential in nature; otherwise qualified inmate sign language interpreters may not interpret in these settings.

  b. Where inmates meet in a group setting and are required to keep the discussions of the group confidential; inmates who are qualified sign language interpreters may assist the deaf or hard of hearing inmate. The inmate interpreter is also bound to keep the matters discussed by the group confidential and only interpreters who completed the program are allowed to assist.

 7. Medical, audiological, and dental contacts when communication between patient and medical personnel is critical to the efficacy of treatment or the safety or security of the inmate.

  a. Due to the need to maintain confidences in these contexts, otherwise qualified inmate interpreters may not act as sign language interpreters in these settings except in cases of emergency where the failure to communicate would result in serious injury, illness, or death.

  b. When medical services are to be provided outside of the correctional facility, the person responsible for scheduling the appointment shall notify the hospital or clinic (provider) that the patient will require qualified sign language interpreting services. This notification should be accomplished as soon as possible so the hospital or clinic can arrange for the provision of the interpreter. If the initial notification is made by telephone, it must be confirmed in writing or electronically.

  c. If a qualified sign language interpreter is not available on site, the facility may utilize the teleconferencing system for obtaining the services of a qualified sign language interpreter.

NOTE: It is understood that OMH will provide interpreter services for their contacts with inmates with sensorial disabilities. DOCCS will only provide interpreter services to OMH in psychiatric emergency situations.

C. The assistive devices listed on Form #2612C, "Reasonable Accommodations for Inmates with Sensorial Disabilities," will be maintained by the designated facilities and provided to individual inmates with sensorial disabilities on an <u>as needed basis, as approved by staff through the reasonable accommodation process</u>.

Sighted guides and guided canes may not be refused by inmates who are blind or severely visually impaired, if their safety would be compromised without them. Inmates may not choose or refuse the assigned sign language interpreter.

D. Verbal announcements and commands, whether through a public-address system, roll call, or otherwise, shall be communicated alternatively to inmates who are deaf or hard of hearing in a manner which can be understood.

No inmate who is deaf or hard of hearing shall be disciplined for failing to obey a verbal order or rule which has not been communicated alternatively in a manner which can be understood by the inmate who is deaf or hard of hearing.

- E. The facility will ensure that visual alarms or warning systems or, where equally effective, other visual or manual means of notifying inmates who are deaf or hard of hearing of emergencies, counts, program changes, or other matters of which the inmate should be informed will be utilized in the areas under facility control in which an inmate who is deaf or hard of hearing resides, sleeps, works, eats, exercises, attends classes, or can otherwise be expected to be present.

**VIII. EQUIPMENT AND SERVICES FOR THE VISUALLY IMPAIRED**

- A. <u>Replacement of Corrective Lenses and Glasses</u>:  DOCCS shall replace corrective lenses or glasses for inmates who are Legally Blind/Severely Visually Impaired (LB/SVI) whenever damaged or lost.  The replacement corrective lenses or glasses shall be provided to the inmate who is LB/SVI at no cost unless DOCCS can demonstrate that the inmate negligently or intentionally broke or lost the lenses or glasses, in which case the inmate who is LB/SVI will have to pay for the replacement lenses or glasses.  Such demonstration may include repeated breaking or losing of such glasses or lenses.

- B. <u>Downgrading of Visual Disability Classification</u>:  DOCCS shall not change an inmate who is LB/SVI visual disability classification from LB to SVI or from LB/SVI to not visually impaired, until the inmate has been physically offered appropriate corrective lenses or glasses and he or she has either accepted or rejected those lenses.
  If a formerly LB/SVI inmate whose visual disability classification has been downgraded to a classification of not visually impaired but who needs corrective lenses or glasses to see properly, loses, breaks, or is otherwise not in possession of his or her corrective lenses or glasses for more than seven days, DOCCS shall grant a request for reasonable accommodations for his or her vision impairment despite the fact that he or she has been re-classified as not visually impaired; unless, DOCCS can demonstrate that the inmate negligently or intentionally broke the lenses or glasses.  Such demonstration may include repeated breaking or losing of such glasses or lenses.

- C. <u>Technology Instruction</u>:  Upon request from an inmate who is LB/SVI, DOCCS shall supply instruction on the proper use of all assistive devices in the Resource Room.  This will include the various uses of assistive software and computer technology.

- D. <u>Resource Room</u>
  1. DOCCS shall maintain a sufficient number of computers at each facility Resource Room with assistive programs for inmates who are LB/SVI.
  2. DOCCS shall allow inmates to use headphones with the Scanning and Reading Appliance (SARA) scanner, or the equivalent device, and provide headphones for that purpose.

- E. <u>Educational Classrooms</u>:  DOCCS will provide large text or enlarged text materials to inmates who are LB/SVI and who are approved for large print as a reasonable accommodation.  DOCCS will not unreasonably deny requests by an inmate who is LB/SVI participating in an academic program administered by DOCCS for reasonable accommodations to use in that academic program, including (but not limited to) SARA scanners and electronic magnifiers (e.g., CCTVs or portable CCTVs).

- F. <u>Housing Block</u>:  Inmates who are LB/SVI shall be permitted to buy from an outside vendor a typewriter capable of typing 14-point font or larger, if such typewriters are available and DOCCS determines they are not a security risk.

- G. <u>Law Library</u>: Each facility designated for inmates who are LB/SVI shall have at least one computer with assistive programs in the Law Library for use by inmates who are LB/SVI.

- H. <u>Protective Custody</u>
    1. Inmates who are LB/SVI shall have access to bold-lined paper, a magnifier, and 20/20 low vision pens while in protective custody.
    2. Inmates who are LB/SVI in protective custody shall have access to other reasonable accommodations that they would have in general population, subject to security, cost, or operational concerns.

- I. <u>SHU</u>
    1. Inmates who are LB/SVI shall have access to bold-lined paper, a magnifier, and 20/20 low vision pens while in SHU.
    2. Inmates who are LB/SVI in SHU shall have access to other reasonable accommodations that they would have in general population, subject to security, cost, or operational concerns.

- J. <u>Trained Staff</u>
    1. DOCCS shall have on staff at least one employee who is trained to operate the LB/SVI assistive devices in the Resource Room.
    2. DOCCS will make best efforts to have available an employee trained in the operation of the LB/SVI equipment in the Resource Room during regularly scheduled weekday hours.

- K. <u>Large Print</u>: DOCCS shall make forms used by inmates who are LB/SVI available in large print, including at a minimum:
    1. Reasonable accommodation request forms;
    2. Facility orientation manuals;
    3. Disbursement or refund request forms;
    4. State Shop forms;
    5. Call-out slips, including for sick call, dentist, library, and Resource Room requests;
    6. Grievance forms; and
    7. Commissary sheets.

- L. At a minimum, DOCCS shall assess an inmate's reasonable accommodations every two years, and upon the occurrence of any triggering event involving an evaluation of a change in vision impairment.

## IX. REASONABLE ACCOMMODATION PROCESS

- A. <u>Reception</u>: Requests for reasonable accommodations may be an ongoing process throughout the inmate's incarceration. The initial determination, as described in Section IV, should follow the inmate through any transfers. However, appropriate reasonable accommodations may change depending upon the abilities of the inmate and the nature of the program or activity.

    For instance, a sign language interpreter is necessary for a doctor to explain to an inmate why he or she wants to administer an HIV test. However, a reasonable accommodation for a deaf inmate who knows how to read who wants to make a commissary buy is a pencil and paper.

    Individuals with the proper authority, such as family members, advocates, and staff, may request a reasonable accommodation on behalf of an inmate and staff should assist the inmates with forms, if necessary.

B. <u>Assessment</u>: At a minimum, DOCCS shall assess an inmate's reasonable accommodations every two years, and upon the occurrence of any triggering event involving an evaluation of a change in vision or hearing impairment.

C. <u>Subsequent Requests for Reasonable Accommodations</u>

   1. Inmate requests for accommodations may be made verbally <u>or in writing</u> to any person employed by DOCCS. Inmates shall be provided with Form #2612B and shall be assisted in completing it, if necessary. In addition, individuals with the proper authority, such as family members, advocates, and staff, may request a reasonable accommodation on behalf of an inmate and staff should assist the inmate with the forms, if necessary.

   2. Requests for accommodations shall be <u>acted upon within five business days, or less if necessary</u>, by either granting the request, denying it, granting it with modifications, or advising the inmate that the request is pending medical evaluation. In making a decision, consideration shall be given to the choice of accommodation made by or on behalf of the inmate.

      All requests for accommodations shall be forwarded to the Deputy Superintendent for Program Services or designee within the facility, and all time frames within this section shall apply. Another medical verification is usually not necessary in most cases where the inmate has been previously evaluated.

      If an inmate who is deaf or hard of hearing has difficulty in communicating, accommodations should be provided expeditiously.

   3. Inmates shall be informed of the determination in writing, via a completed Form #2612B, and interpreted into sign language, if necessary. The inmate response section will record whether the inmate agrees with the determination or disagrees and desires a review by the Superintendent.

D. <u>Review by the Superintendent</u>

   1. If the inmate requests a review by the Superintendent, the Superintendent or designee shall grant the request or, if necessary, arrange a meeting with the inmate within one business day to discuss the nature of the request and the needs of the inmate. The assistance of a sign language interpreting service shall be provided where required to facilitate communication.

   2. The Superintendent or designee shall render a decision within five business days of receiving the request or sooner, where medical needs or other exigencies make it necessary.

      The review decision shall be presented to the inmate in writing, via a completed page 2 of Form #2612B, and interpreted into sign language where necessary.

    The inmate shall be advised of his or her right to grieve the decision in accordance with Directive #4040, "Inmate Grievance Program."

3. When considering an individual request for reasonable accommodation, DOCCS will consider similar requests that have been made by other inmates at the facility within the past six months.

4. Upon request, DOCCS shall provide inmates who are LB/SVI with bold-lined paper in any situation where non-visually impaired inmates would ordinarily be supplied with blank writing paper free of charge.  There will be no additional restrictions beyond those normally placed on supplying blank writing paper.

5. DOCCS shall provide inmates who are LB/SVI in SHU or protective custody with at least two 20/20 pens for in-cell use and shall replace them as needed.  Inmates who are LB/SVI housed in other locations may obtain, by request or purchase, 20/20 pens for in-cell use.

6. Designated staff providing reasonable accommodations at each facility (or if unavailable, another staff person) shall make rounds at least one time per week to see inmates who are LB/SVI who are not housed in general population, including those in SHU, protective custody, and mental health units, and provide those inmates with reasonable accommodations as appropriate.

E. <u>Removal of Reasonable Accommodations</u>

1. When an inmate who is LB/SVI receives a correction for his or her vision impairment that results in a change of his or her classification from LB to SVI or from LB/SVI to not visually impaired, DOCCS shall not discontinue that inmate's access to a previously approved accommodation without first consulting with a medical provider who will document any change in classification in the inmate's health record.

2. If DOCCS determines that a removal of a previously approved accommodation is justified, as provided for above, DOCCS will provide the reasons for that decision, in writing, to the inmate.  If the reasonable accommodation is removed for a security reason, no further explanation beyond this statement need be given.  DOCCS can remove an accommodation if staff determines that allowing the inmate to possess the accommodation presents a security risk to himself, herself, or others.

F. <u>Record Keeping</u>

1. A copy of all requests for accommodations and determinations shall be maintained in the Guidance folder, and medical and Community Supervision files.  A copy shall also be maintained in the OMH file, if applicable.

2. Inmate Grievance Program files concerning reasonable accommodations shall be kept in the facility Grievance Office for five years from the date of final action.

3. A copy of all written requests for reasonable accommodations, subsequent determinations, and related grievance decisions, complaints, and letters shall be forwarded to the ADA Coordinator in Central Office and maintained by that office for five years from the date of final action.

**X.	GRIEVANCE PROCEDURE**:  Any inmate who believes that he or she has been discriminated against because of a disability, or who disagrees with a decision on his or her request for a reasonable accommodation, can submit complaints pursuant to Directive #4040.  The facility shall send all decisions rendered by the Superintendent or designee on reasonable accommodation grievances to the ADA Coordinator in Central Office.  The ADA Coordinator shall have the authority to initiate a review of any denied request for accommodations or any denied grievance.

**XI.	TRANSFERS OF INMATES WITH SENSORIAL DISABILITIES**

    A.	Not all facilities can accommodate inmates with sensorial disabilities.  Transfer requests (both scheduled and unscheduled) for inmates who are deaf (HL10), hard of hearing (HL20), legally blind (B240), or severely visually impaired (V230) must indicate the inmate's disability on the transfer request.  It is the responsibility of the person submitting the transfer request (usually the ORC) to indicate the inmate's sensorial disability.

    B.	DOCCS shall use best efforts to transfer inmates who are LB/SVI directly from one facility to the receiving facility.  These inmates shall not be held overnight at an in-transit facility during transfer unless necessary.  Any stay at an in-transit facility should not be longer than two days and the receiving facility shall make best efforts not to place an inmate who is LB/SVI in a cell with another inmate at the in-transit facility.  If a transfer of an inmate with a sensorial disability involves an overnight stay at an interim facility, it is the responsibility of the sending facility's Inmate Record Coordinator (IRC) to alert the interim facility of the needs of the inmate.  Facilities should avoid transfers of inmates with sensorial disabilities immediately prior to weekends or holidays, in order to avoid weekend or holiday stays in interim facilities.

    C.	SHU to SHU transfers of inmates who are deaf (HL10), hard of hearing (HL20), legally blind (B240), and/or severely visually impaired (V230) must be to another designated facility.

    D.	Personal items provided to an inmate with a sensorial disability as reasonable accommodations, such as a Shake-Awake alarm, phone amplifier, or talking watch, will be sent with the inmate upon transfer to another facility which is designated for the sensorially disabled.  This equipment should be transferred via the IRC Office under separate cover.  The sensorial staff at the receiving facility will be responsible for the reissue of the equipment as appropriate.

        Other items of reasonable accommodation, such as talking calculators, pocket talkers, etc., are loaned to the inmate and should be kept at the loaning facility.